**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EDUARDO FIGUEROA-NEGRON,

    Petitioner,

v.                                    CASE NO: 8:10-CV-2722-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition, a supplement to the petition (Dkt. #14), Respondent's response (Dkt. #29) and Petitioner's reply (Dkt. #30). Upon review, the Court determines that the petition is procedurally barred and, were it not procedurally barred, would fail on the merits.

## Background

Figueroa-Negron was charged with armed delivery of heroin, armed possession of heroin, and armed trafficking in heroin (4 to 14 grams). He was convicted in a jury trial and, on May 22, 2009, was sentenced to ten years in prison. His direct appeal was denied and the mandate issued on October 20, 2010. The instant petition was timely filed with this Court on December 3, 2010.

The petition raises four grounds for relief:

**Ground one:**   Perjury of state witness.

**Ground two:**   Improper search and seizure.

**Ground three:**   Contaminating of evidence.

**Ground four:**   Perjury on the stand.

The factual background of Figueroa-Negron's arrest, which is described by Figueroa-Negron's lawyer in his brief on direct appeal, is helpful in understanding the claims made in the petition:

> Mr. Figueroa Negron's arrest was the result of a "buy-bust" operation initiated by the Tampa Police Department. Officer Rodriguez paid confidential informant (hereafter "CI") either $20 or $40 to make contact with someone named "Neg" and set up a purchase of heroin. (T243-244). According to Officer Rodriguez, CIs are paid for their "effort to get something" but not for "results." The officer testified that CIs are usually people who are drug users themselves and want money to purchase drugs. (T266-267).
>
> Officer Rodriguez and Officer Haley were present when the CI made a telephone call to the target; however, the officers' attempt at recording the phone call was unsuccessful. (T250-251). Officer Rodriguez heard the CI's side of the conversation in which she told the person she wanted some "camisas." The officer testified that he understood this to be street slang for a "deck of heroin." (T248).
>
> The CI was searched to ensure she did not have any narcotics or money prior to meeting up with the target. (T169, 246). Officer Haley, who searched the CI, testified that she did not recall how long it was between the planning phase of the operation and the alleged incident. (T170).
>
> The CI was given two $20 bills, the serial numbers of which were recorded, to make the transaction. (T261-262). The officers dropped the CI off near the location of the planned meeting with the target. The CI stayed in contact with Officer Rodriguez on a cell phone, and the officer watched the CI as she approached the scene of the incident. She maintained a "visual" on her until Corporal Miles, waiting at the scene, could see her. (T253-254, 122-125).

Corporal Miles testified that he saw Mr. Figueroa Negron and the CI make contact with each other and have a conversation which Corporal Miles could not hear. (T121, 124-126, 132). Mr. Figueroa Negron pulled a white pill bottle out of his pocket, and then pulled out a "silver item." (127-128). Corporal Miles testified that "they did a hand-to-hand exchange." Corporal Miles did not see the CI give Mr. Figueroa Negron any money, but saw money in Mr. Figueroa Negron's hand as he conversed with the CI. (T130).

Asked if he observed the CI obtain the silver object that Mr. Figueroa Negron pulled out of his pocket, Corporal Miles testified, "I can't say that I saw it in her hand, once he had the money in his hand I knew that the deal was done." He stated that he "knew the deal was done" because "whenever a person has money in their hand that means he's already giving [sic] her the narcotics or the transaction." (T132-133).

The CI gave a predetermined signal, and Corporal Miles told Officer Rodriguez it was time to move in and make arrests. Officers converged on Mr. Figueroa Negron after he had walked about ten feet from the site of the alleged transaction. (T133-134).

Officer Pruitt, who did not witness the alleged transaction, waited about two blocks away and moved in to make arrests upon receiving a signal. He arrested Mr. Figueroa Negron based on a description. Officer Pruitt searched Mr. Figueroa Negron's right side and discovered a pill bottle, a wallet and $40 in cash. The serial numbers on the money were matched with the money given to the CI. A "whole bunch of silver wrappers" were found inside the pill bottle and small "ring baggie" was found inside the wallet. Officer Stevens, who did not observe the alleged transaction, searched Mr. Figueroa Negron's left side and recovered a hand gun. (T154, 157-158, 162, 179, 192-193, 206, 262).

The parties stipulated that the gun recovered from Mr. Figueroa Negron was fully functional, including having the ability to expel projectiles, and that fingerprints pulled from the gun were of insufficient quality for comparison. (T197).

After the "take down," Officer Rodriguez retrieved heroin from the CI. Thereafter, Officer Haley searched the CI and found no money or other contraband on her. (T259-261).

Exhibit 2, pp. 4-7.

Figueroa-Negron only raised two issues on direct appeal. The summary of the argument for each issue was:

**Issue I:**
The trial court erred in denying Mr. Figueroa Negron's motion for judgment of acquittal as to Count I (armed delivery of heroin). The State failed to prove that a transaction took place between Mr. Figueroa Negron and the CI. None of the law enforcement officers witnessed the alleged transaction; therefore, the State's case was based entirely upon circumstantial evidence. The State failed to rebut Mr. Figueroa Negron's reasonable hypothesis of innocence that the CI did not obtain the drugs from him but instead obtained them from a different source.

**Issue II:**
The trial court committed reversible error in refusing to grant Mr. Figueroa Negron's motion for judgment of acquittal on Count III (armed trafficking in heroin). The State failed to establish that Mr. Figueroa Negron possessed the requisite amount of heroin to be convicted of trafficking. The State's chemist did not weigh the substance itself, and did not test each separately wrapped packet of light brown powder.

Exh. 2, p. 10.

## STANDARD OF REVIEW

Figueroa-Negron has filed his petition under 28 U.S.C. § 2254. That statute provides this Court shall not entertain an application for writ of habeas corpus unless the petitioner is in state custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). And, before bringing his federal petition, a state prisoner must exhaust all state court remedies that are available. 28 U.S.C. § 2254(b), (c). That is, a petitioner must fairly present the U. S. Constitutional nature of each issue to the state's highest court either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346 (1989). Failure to do so results in the Petitioner being procedurally barred from filing the issue with this

Court. The only exception is through a showing of cause for and actual prejudice from the default, or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in a conviction of defendant who was "actually innocent." *Wainwright v. Sykes*, 433 U.S. 72 (1977).

## Discussion

None of the issues raised in Figueroa-Negron's habeas petition, except perhaps a portion of ground two which is factually incorrect, was raised in the state court below. Therefore, all but a portion of ground two are procedurally barred and must be dismissed.

A petitioner is required to first present each claim to the appropriate state court before presenting it in federal court by way of a habeas petition. It must be apparent from the face of the argument that the issue being presented to the federal court was fairly presented and considered by the state court. Otherwise it is waived. *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995). The only exception is when a petitioner is able to demonstrate cause for his failure to properly present the claim in state court and actual prejudice resulting therefrom. To show actual prejudice, one must show that the constitutional violation probably resulted in the conviction of an innocent person. *Coleman v. Thompson*, 501 U.S. 722 (1991). Here, Figueroa-Negron makes no showing of cause to excuse his default nor actual prejudice. Thus, each ground, except ground two, is due to be dismissed as procedurally barred.

Even if grounds one, three, and four were not dismissed, they would fail on the merits. By way of explanation to Figueroa-Negron why all grounds fail on the merits, the Court will discuss each ground.

**Ground one:**     Perjury of state witness.

In support of ground one, Figueroa-Negron argues:

> On the police report the arresting officer's involved stated that they seen me make the drug transaction, but when in court they stated that some officer's did not see make the drug transaction. The CI used against me is a know drug addict. They forced her to state that we had a phone transaction on the sale of drugs. They stated that it was recorded that the could not prove.

Petition (Dkt. #1), p. 4.

In ground one, Figueroa-Negron states in conclusory fashion that an officer or officers committed perjury. He does not identify any particular officer, the statement made under oath that was allegedly false, or the evidence in the record from which this Court might determine the truth or falsity of the statement. It is clear from the evidence (and admitted in Figueroa-Negron's appellate brief) that the officers tried to record the telephone conversation between the confidential informant (CI) and Figueroa-Negron, but the recording was unsuccessful. The officers testified that they could only hear the CI's portion of the conversation.

The evidence is also clear that the officers searched the CI to make sure she had no money or drugs on her person prior to the transaction. The officers gave the CI two twenty dollar bills and recorded the serial numbers. They observed the CI approach Figueroa-Negron and enter into a conversation. They saw Figueroa-Negron holding money in his hand

after the conversation. The officers kept the CI under visual surveillance the entire time and, upon searching her after her meeting with Figueroa-Negron, retrieved two foil wrappers containing a substance that later tested positive for heroin. When the officers searched Figueroa-Negron after the arrest, they found the two twenty dollar bills they had given the CI. The serial numbers matched.

Figueroa-Negron has not shown any perjury on the part of the officers or any violation under the U. S. Constitution. Therefore, ground one fails on the merits.

**Ground two:**     Improper search and seizure.

In support of ground two, Figueroa-Negron states:

> The police did not find the drugs on me. The drugs they found was not completely tested for heroin.

Petition (Dkt. #1), p. 4.

While this ground is labeled as an improper search and seizure claim, the supporting argument only contends that the drugs were not found on Figueroa-Negron's person and not completely tested for heroin. Contrary to Figueroa-Negron's contention, his own lawyer acknowledged in the statement of facts on direct appeal that he was searched upon arrest and a pill bottle was discovered containing a "whole bunch of silver wrappers." Those silver wrappers contained a powdery substance which was later tested for heroin.

Figueroa-Negron's contention that the drugs were "not completely tested for heroin" apparently refers to his lawyer's argument on appeal that the chemist who testified at trial only tested some of the foil wrappers. That is an erroneous reading of the record. The

chemist actually testified that he analyzed each of the 48 different foil packages and each contained heroin.

The chemist's testimony, in pertinent part, was:

Q: After performing those two analysis (sic), were you able to form an expert opinion as to the identity of the substance in State's Exhibit 3?

A: Yes, I was.

Q: What is that opinion?

A: In each foil the substance contained heroin.

Q: How much did that heroin weigh?

A: Well, the first foil it was a little over eight one hundreds (sic) of a gram. And the second foil was eleven one hundreds (sic) of a gram.

Q: Thank you.

MS. LOW: Judge, may I approach the witness again?

THE COURT: Yes.

BY MS. LOW:

Q: I'm showing you State's Exhibit 4. Do you recognize that packaging? You can take it out.

A: Yes, I do.

Q: How do you recognize what's inside that package?

A: Yes, I do.

Q: And how do you recognize that?

A: I have my identifying marks on it which are my laboratory case number and the date that I actually opened the package?

Q: Did you have a chance to analysis (sic) that substance as well?

A: Yes, I did.

Q: This is exhibit what, Counsel?

MS. LOW: I'm sorry, this is Exhibit 4.

THE COURT: Thank you.

BY MS. LOW:

Q: Mr. Horvat, how did you analyze the exhibit in 4? I know - - I'm sorry. You did the two tests that you previously explained, correct?

A: Yes, I did.

Q: And can you tell us about what exhibit 4 is made up of?

A: There were actually 48 separate folded pieces of foil that each contained a light brownish powder.

Q: How did you analyze those 48 different packages?

A: I did each one of them - - I did the analysis on each one of them. The first thing I did was, I broke them up into three groups just based upon how they looked.

The first group consisted of 18 foils that basically had the dull side out after it was folded. The second set consisted of 10 foils that each had the dull side out but they either had a mark, a black mark on them or they were just dirty, I couldn't quite tell which. They were marked. And so I sort of segregated those.

And then the last set of 20 had the shiny side of the foil was on the outside after being folded.

> So what I did - - the first thing I did was took a foil out of each of the three group, did the analysis on it to see if it looked like all the groups were consistent. And based upon the analysis they did all appear to be the same. And so then continued on and in each group I did the rest of the analysis of the foils.
>
> Q: Now after all of your analysis were you able to form an expert opinion as to substance in State Exhibit 4?
>
> A: Yes, I was.
>
> Q: What is that expert opinion?
>
> A: That each foil contained heroin.
>
> Q: Did you have an opportunity to weigh State's Exhibit 4?
>
> A: Yes, I did.
>
> Q: When you weighed the heroin in State's Exhibit 4, did you weigh it with or without the foils?
>
> A: The weight that was reported was without the foil.
>
> Q: Is it true or correct that you took all of the powder or heroin outside the foils?
>
> A: Yes.
>
> Q: And what was the weight of the heroin without the foils?
>
> A: The total weight of the powder inside the foils was 5.0 grams.

Transcript, Exh. 1C, pp. 222-226.

There is no factual basis supporting ground two and it therefore fails on its merits.

**Ground three:** Contaminating of evidence.

In support of ground three, Figueroa-Negron states:

> The police contaminated the evidence by mixing all of the drug baggy's together without first testing all of the baggy's. Only 3 of the baggy's where tested and proven to contain heroin. The other bag's where not tested and they could have contain baby powder.

Petition (Dkt. #1), p. 5.

Once again, Figueroa-Negron merely makes conclusory statements. He points to no specific evidence in the record to support this claim. And the evidence in the record is to the contrary – the police did not mix the foil wrappers together, the state's chemist did that in testing each of the foil wrappers and opining that each contained heroin.

Ground three lacks a factual basis and therefore fails on the merits.

**Ground four:** Perjury on the stand.

In support of ground four, Figueroa-Negron states:

> The officer that tested the drugs stated in the police report that he tested all 3 grams of heroin and that it all came back positive for heroin. On April 20, 2009 on the stand my lawyer ask the officer if he tested all the baggy's, and the officer stated "no".

Petition (Dkt. #1), p. 5.

Figueroa-Negron neither identifies the officer that he claims committed perjury nor the statement in the record that he claims to be false. And his statement about the contents of the police report is inaccurate. The police report only indicates that, subsequent to arrest, the powder was field tested and gave a presumptive positive for heroin. Exh. 1-A, p. 9. The police report was not admitted into evidence and had no effect on Figueroa-Negron's conviction. Ground four fails on the merits.

It is therefore ORDERED AND ADJUDGED that:

1. Grounds one, three, and four of the petition for writ of habeas corpus (Dkt. #1) are DISMISSED as procedurally barred. Had they not been dismissed, they would have been denied on the merits.

2. Ground two is denied on the merits.

3. The Clerk is directed to terminate any pending motions and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on January 30, 2012.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2010\10-cv-2722.deny 2254.wpd*